**J.C. v. T.K.**

C.P. of Lycoming County, Nos. 08-20,853 and 08-20,855

*Terra Koernig*, for plaintiff.
*Melissa Clark*, for defendant.

LOVECCHIO, *J.*, December 2, 2013—The parties are the natural parents of M.C. and R.C. By agreement of the parties, memorialized in a custody order dated October 10, 2008, the parties enjoy shared legal and physical custody of their children.

On or about June 20, 2013, Mother filed a Notice of Relocation seeking to relocate with the children to Turbotville, Northumberland County. Father filed an objection to the notice and requested a hearing. Hearings were subsequently held before the Court on July 31, 2013, September 26, 2013, and September 30, 2013.

Subsequent to the first hearing, mother and her husband relocated to Turbotville. Pending this decision on the

relocation request, the parties have followed the custody order previously in place.

The parties agree that the children should not continue to travel from their different residences to their respective schools. The parties submit that the court should decide the primary residence of the children, being with the father where he resides now or with the mother in Turbotville where she relocated. The parties agree that the choice of that residence will control as to whether the children will reside primarily with that parent.

Given the fact that the mother has already relocated, it is somewhat confusing with respect to applying a relocation analysis to these proceedings. Indeed, it appears that the court should apply a best interest analysis in deciding which parent should receive primary custody of the children during the school year. Yet, in the party's respective briefs, each have analyzed the respective issues by referencing the statutory relocation factors.

Relocation is now governed by 23 Pa. C.S.A. §5337. Relocation is defined as a change in the residence of the child which significantly impairs the ability of the nonrelocating party to exercise custodial rights. 23 Pa. C.S.A. §5322 (a).

Upon further consideration, the court will adopt the analysis proposed by the parties in determining the issue. Mother has relocated and the children reside with her a substantial portion of the time. Because Turbotville is approximately a 30-minute drive from where the children reside with their father, the court concludes that the prospective change in residence of the children would significantly impair the ability of the father to exercise custodial rights.

Determining the best interests of the children is not a task that this court takes lightly. In cases like the case at hand, the decision is made more difficult by virtue of the fact that the children are flourishing under the present set of circumstances. It is readily apparent to the court that both parents deeply love and care for their children and that their welfare is important to them.

Mother credibly testified that the farm property in Turbotville while obviously being a transition for the kids and while not being "entirely familiar with the whole entire community yet", would permit her to be actively involved in the PTO and more involved with the school perhaps as a grade parent. She testified as well that it won't be long before the children are in high school and that Williamsport, with police officers at the high school, seems more like a prison than a school. She is of the belief that the safety of any school is important and that when she compares the two schools, there is more "stability, safety [and] more likeminded kids" in Turbotville. In looking at the "bigger picture in the future" she hopes to have her children involved in the family business. Mother argues that it is worth relocating the children at this point. Moreover, mother is willing to continue the children in their activities in the Williamsport area including but not limited to daughter's participation in the Uptown Music Collective.

Mother's main reasons for moving are to expand the farm business to eventually get her children involved and for a better school district. Mother's husband, JR, is a police officer for the city of Williamsport. He testified quite emphatically that because of the diversity of individuals in the Williamsport Area School District, it has "a lot of issues." He testified that there are certainly

greater "bad influences" and that safety is a huge concern for parents. Williamsport has one school resource officer and apparently needs two more. He testified based on information he received from other officers, that on a daily basis there are assaults, weapons on school property, rapes and related problems. He testified that the Williamsport schools are so "out of control" that if the people knew what really occurred, there would be a "mass exodus." He testified that he really had "nothing good to say about the Williamsport School District" and that the odds of getting into trouble were much higher at Williamsport than at Warrior Run.

Mother is proposing relocation and, accordingly, has the burden of establishing that the relocation will serve the best interests of her children as shown under the statutory factors set forth in 23 Pa. C.S.A. §5337 (h). The court will address each of the required factors seriatim.

The first factor involves the nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the children's lives.

Although the respective briefs of the parties persuasively argue on behalf of the party who submitted such, it appears to the court that for the most part the children's relationship with each of their parents is strong and normal. Indeed, the children appear very well adjusted, intelligent and happy.

What does concern the court is mixed messages they may be receiving from mother. Mother throughout the proceedings appeared very principled and fixed in her opinions regarding how children should be raised, what is expected of children, what is best for children and the type

of environment in which children should be raised. Both mother and her husband severely criticized environments in which there are a diversity of cultures apparently opening the door to immoral and/or improper behaviors such as sexual promiscuity and drug usage. It is clear that mother expresses her opinions to her children. M.C. testified that she believes her mother smokes "drugs." M.C. testified as to finding "marijuana" in her mother's bedroom and seeing her mother smoke it at least once. M.C. testified that she knows it is marijuana from what she learned at school. Yet, and to the court's great dissatisfaction, mother did not offer any testimony to rebut that of her daughter. Mother even refused to take a drug test. At the very minimum, M.C. believes her mother is doing something wrong. M.C. is confused and concerned. Mother's refusal to address her daughter's concerns only exacerbates the confusion.

As well, it appears that mother may be further confusing her children by appearing to them to place her personal desires over those of her children. For example, while mother wants to be involved in her children's lives, she limits their activities in order not to overburden her schedule or resources. As well, mother's insistence on the children abiding by her rules without question or explanation begs logic. The children are clearly receiving mixed and confusing messages.

The court must next consider the age, developmental stage, needs of the children and the likely impact the relocation would have on the children's physical, educational and emotional development.

The children are currently thriving in their environment. They are doing well in school, partaking in extracurricular activities and have developed close relationships with

friends and family. They enjoy their home life and are starting to develop talents which may certainly open doors for them in the future with respect to continuing education, accolades and perhaps even careers. Much of the evidence mother offered related to the desirability of having the children attend the Warrior Run School District instead of the Williamsport Area School District. Mother's major concerns centered on the diversity in the Williamsport Area School District, her perception that it is unsafe and her opinion that her children will be exposed to drugs and violence.

Mother, however, failed to present first-hand testimony from any representative of the Warrior Run School District. Mother failed to call any teacher, staff member, coach, guidance counselor or administrator. While mother's husband credibly testified regarding his experiences in Williamsport much, if not most, of his testimony relating to the Williamsport Area School District was secondhand. In fact, the firsthand testimony was presented by father and clearly demonstrated many benefits of the Williamsport Area School District. It is clear to the court that relocating the children to Turbotville would have a negative impact on their educational and emotional development. This is not because of any conclusion that the Warrior Run School District is somehow inferior to the Williamsport Area School District but rather due to the fact that the evidence presented to the court demonstrates that the children are flourishing in their present environment and that the Williamsport Area School District can enhance their development.

The court must next consider the feasibility of preserving the relationship between the nonrelocating party and the children through suitable custody arrangements,

considering the logistics and financial circumstances of the parties.

Clearly, if the children were relocated to Turbotville, it would be impossible to preserve their present relationship with father. Indeed, a majority of the children's time would be spent traveling in motor vehicles to and from different towns for different activities.

The court must next consider the children's preferences, taking into account their age and maturity.

Both children expressed their preference for living primarily with their father. As well, both children expressed a strong preference to not change school districts. They enjoy their teachers, their activities and their friends. They enjoy some parts of Turbotville but neither child wishes to reside there or to go to school there. Both children, as previously noted, are exceptionally mature for their age, very well spoken and intelligent. The reasons in support of their preferences were sound and credible.

The court must next consider whether there is an established pattern of conduct of either party to promote or thwart the relationship of the children and the other party.

While there was some testimony as to mother making some unilateral decisions for the children, the court cannot conclude that there is any established pattern of conduct by either party to thwart the relationship with the children to the other party. To the contrary, the court commends both mother and father for encouraging and promoting a relationship with not only the other but with the circle of significant others that were brought into the children's lives through their parent's relationship with said others.

The court must next consider whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

The mother has excellent reasons for wanting to move to the Turbotville area. The court has no hesitation in concluding that the relocation will enhance the general quality of life for her including providing additional financial and emotional benefits.

While father argues that it is not clear that the move will actually increase the quality of life for the mother, the move will allow the mother to expand her goat care business and have greater freedom in how she uses the land. It will increase the financial growth of the family by creating a family business that the children may someday inherit.

The court must next consider the reasons and motivation of each party for seeking or opposing the relocation.

Mother argues that relocating to Turbotville will provide a stronger atmosphere of personal responsibility for the children, place the children in a school district with more peers with the same interests and background, provide a safer environment than the Williamsport Area Schools and provide the children with a learning atmosphere where police officers do not patrol the hallways and where both children can reach their full potential. While mother's sentiments are sincere and while the court has no doubt that the mother believes such, she has failed to sustain her burden with respect to proving such. Indeed, the evidence is to the contrary. By staying in Williamsport, the children will remain with their friends as well as peers with the same interests and background. By staying in Williamsport,

the children will continue to thrive academically and otherwise. As mother concedes, the children are not currently involved with negative influences nor are they involved in drugs or other self-destructive behaviors.

Ironically, mother argues that by staying in Williamsport the children will be involved with "the higher presence of drugs" thus making "them more susceptible to such influences in the future." Yet, mother refuses to dispel any inclination that her daughter may have that Mother smokes marijuana. Mother argues that the allegation of drug use "raised by the father" is an attempt to humiliate the mother. Mother nonetheless refused a drug test and despite having the opportunity to rebut such testimony, failed to do so. Moreover, the substance of the alleged drug use was garnered through M.C.'s testimony, not father's testimony.

Contrary to what mother claims, the court is convinced that the father, as argued in his brief, is not motivated by any desire except, foremost, to ensure his children thrive, are healthy, are not in danger and are well taken care of and second, to continually maintain his relationship with the children.

The court must next consider any present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the children or an abused party.

Both parties concede that this factor is not applicable.

Finally, the court must consider any other factor affecting the best interest of the children.

Both parties in their written submissions to the court are satisfied that the previous factors address the best

interests of the children.

The court cannot necessarily agree. Both of the parents have to date provided remarkably well for their children. Both parents despite completely different parenting styles and apparently different morals and principles, have done an excellent job in not improperly influencing their children or improperly alienating their children from the other. Neither party is free from fault and neither party is perfect.

These children have been the beneficiaries of loving and caring parents who have made sacrifices for their children. While the mother has sincere concerns, the court does not believe it is in the best interest of the children for them to relocate to Turobtville and to attend the Warrior Run School District. The danger of removing the children from their present structure and infusing their lives with so much change portends a negative result.

The court will deny the mother's motion to relocate the children to Turbotville and will enter an order consistent with this opinion.

## ORDER

And now, this 2nd day of December 2013, following hearings, argument and the submission of briefs, the court denies mother's request to relocate with her children to Turbotville.

The court grants father's oral motion to modify custody in light of the fact that mother has relocated to Turbotville.

The parties shall share legal custody of the minor children pursuant to the Legal Custody, Obligations of Shared Legal Custody and General Parental Obligations

portions of the court's October 10, 2008 order.

The parties shall share physical custody of the children as follows:

A. During the School Year. Mother shall have the children Fridays after school, or 6:00 p.m. if there is no school, until Sunday evening at 7:00 p.m. for three weekends per month. Father shall have the children the balance of custodial time.

B. During the non-school year. The parties shall alternate weeks, week on-week off, with exchanges occurring at 6:00 p.m. on Fridays.

1. Holidays: The holiday schedule outlined in the October 10, 2008 order shall remain in full force and effect.

2. Vacation: The vacation schedule outlined in the October 10, 2008 order shall remain in full force and effect.

3. Transportation: The party about to begin a period of custody shall be responsible for transportation unless otherwise stated in this order or agreed to by the parties.

4. Extensions of times of physical custody: In the event that any period of a party's physical custody is scheduled to end during the afternoon or evening on a specific day which would be followed by the same party beginning another time of physical custody on the immediately following day, the ending time of the physical custody shall be extended through an overnight period of time so as to extend into the following day and not interrupt such party's period of time of physical custody. This

provision shall not be applied if doing so would deprive the other party of custody during a time of holiday.

5. Relocation of the children: If a party wishes to relocate with the minor children, said party must provide notice to every other individual who has custody rights to the children according to the following guidelines. Notice must be sent by certified mail, return receipt requested, and shall be given no later than 60 days before the date of the proposed move or the tenth day after the date that the party has notice of the relocation, if the party did not know and could not have reasonably known of the relocation in sufficient time to comply with the 60 day notice. The notice provided to every other individual who has custody rights to the children must conform to 23 Pa.C.S.A. §5337 and contain the following:

1. The address of the intended new residence.

2. The mailing address for the new residence.

3. Names and ages of all of the individuals who intend to live in the new residence.

4. The home telephone number of the intended new residence, if available.

5. The name of the new school district and school.

6. The date of the proposed relocation.

7. The reasons for the proposed relocation.

8. A proposal for a revised custody schedule.

9. Any other relevant information.

The party must sent with the notice, a blank counter-

affidavit conforming to 23 Pa.C.S.A. §5337(d)(1) which can be used to object to the proposed relocation and the modification of a custody order.

The notice must warn the non-relocating party that if the non-relocating party does not fill out and file with the court the counter-affidavit to object to the proposed relocation within 30 days after receipt of the notice, that party shall be foreclosed from objecting to the proposed relocation and forever lose their right to stop the relocation.